# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BENOIT BROOKENS, *et al.*

      Plaintiffs,

vs.

UNITED STATES OF AMERICA, *et al.*,

      Defendants

Civil Action No. 1:12-cv-00502 (RWR)

## MOTION TO DISMISS BY DEFENDANTS
## THEODORE METZLER AND COVINGTON & BURLING LLP

Defendants Theodore Metzler and Covington & Burling LLP ("Covington") move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint against them, with prejudice, for at least three reasons.[1] **First**, Mr. Metzler has absolute immunity against claims for damages based on his conduct as a member of the D.C. Court of Appeals Committee on the Unauthorized Practice of Law, including his conduct in connection with prosecuting a criminal contempt action against Mr. Brookens for violation of that court's rules against the unauthorized practice of law. **Second**, the plaintiffs' requests for declaratory and injunctive relief are an improper collateral attack on rulings made during the course of the pending criminal contempt proceedings against

---

[1] Although it should not be necessary for the Court to reach the question, the complaint should also be dismissed because its allegations do not satisfy the plausibility standard established by the United States Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Mr. Brookens, and Mr. Brookens should seek relief from those rulings in the D.C. Court of

Appeals rather than in this Court.  **Third,** Covington, as the employer of Mr. Metzler, also has

absolute immunity against claims for damages arising out the conduct of Mr. Metzler in

connection with those proceedings.

Covington and Mr. Metzler submit the accompanying memorandum of points and

authorities in support of their motion.  For the convenience of the Court, a proposed Order also

accompanies this motion.

<div style="margin-left: 40%;">

Respectfully submitted,


 /s/ Jeffrey G. Huvelle
Jeffrey G. Huvelle (D.C. Bar No. 227769)
William P. Skinner (D.C. Bar No. 230805)
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Tel:    202-662-5470
Fax:    202-778-5470
Email: jhuvelle@cov.com
Email: wskinner@cov.com

Counsel for Defendants Theodore Metzler and
Covington & Burling LLP

</div>

April 20, 2012

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BENOIT BROOKENS, *et al.*

     Plaintiffs,

vs.

UNITED STATES OF AMERICA, *et al.*,

     Defendants

Civil Action No. 1:12-cv-00502 (RWR)

## MEMORANDUM OF DEFENDANTS THEODORE METZLER AND COVINGTON & BURLING LLP IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Jeffrey G. Huvelle (D.C. Bar No. 227769)
William P. Skinner (D.C. Bar No. 230805)
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Tel:    202-662-5470
Fax:    202-778-5470
Email: jhuvelle@cov.com
Email: wskinner@cov.com

Counsel for Defendants Theodore Metzler and
Covington & Burling LLP

April 20, 2012

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ **Error! Bookmark not defined.**

STATEMENT OF FACTS ....................................................................................... 1

    A.    Defendants Jack Metzler and Covington & Burling LLP....................................... 1

    B.    Plaintiffs Benoit Brookens and Mary Todd ........................................................ 2

    C.    Brookens' Prior Unauthorized-Practice Violations and Injunction ..................... 2

    D.    Current Contempt Proceedings ............................................................................ 3

    E.    Prior Attempt to Disqualify Mr. Metzler ............................................................ 4

    F.    Plaintiffs' Allegations ......................................................................................... 4

ARGUMENT ........................................................................................................... 4

RULE 12(b)(6) STANDARD OF REVIEW ........................................................... 5

I.      PLAINTIFFS' CLAIMS AGAINST MR. METZLER MUST BE DISMISSED
      BECAUSE MR. METZLER IS ABSOLUTELY IMMUNE FROM DAMAGES
      SUITS ARISING FROM HIS WORK FOR THE COMMITTEE, AND
      PLAINTIFFS CANNOT USE THIS COURT TO REVIEW AND REVERSE
      UNFAVORABLE RULINGS IN THE ONGOING CONTEMPT
      PROCEEDINGS. ............................................................................................... 6

    A.    Plaintiffs' Damages Claims Against Mr. Metzler Are Barred By Absolute
          Immunity. ............................................................................................................ 6

          1.    Mr. Metzler's challenged activities are functionally judicial in
              nature................................................................................................. 9

          2.    Failing to hold Mr. Metzler absolutely immune would invite
              harassing lawsuits by those investigated by the Committee. .................... 13

          3.    The existence of judicial safeguards negate any need to subject
              Committee members like Mr. Metzler to damages actions. ..................... 13

          4.    The Committee acted within its jurisdiction in pursuing contempt
              proceedings against Mr. Brookens............................................................ 14

    B.    Plaintiff Brookens' claims for declaratory and injunctive relief fail to state
          a claim because they seek to have this court interfere with ongoing
          criminal proceedings in another forum. ............................................................. 16

II.    PLAINTIFFS' CLAIMS AGAINST COVINGTON MUST BE DISMISSED
      BECAUSE THEIR COMPLAINT FAILS TO ALLEGE ANY UNLAWFUL
      CONDUCT OTHER THAN THAT FOR WHICH MR. METZLER IS
      ABSOLUTELY IMMUNE.................................................................................. 17

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abhe & Svodoba, Inc. v. Chao,*
508 F.3d 1052 (D.C. Cir. 2007) .................................................................................5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................ *passim*

*Bettencourt v. Bd. of Registration in Med.,*
904 F.2d 772 (1st Cir. 1990) ....................................................................................8

*Brookens v. Comm. on Unauthorized Practice of Law,* ("*Brookens I*"),
538 A.2d 1120 (D.C. 1988) ...........................................................................2, 3, 14

*Butz v. Economou,*
438 U.S. 478 (1978) ..................................................................................................7

*Carroll v. Gross,*
984 F.2d 392 (11th Cir. 1993) ..................................................................................8

*Clulow v. Oklahoma,*
700 F.2d 1291 (10th Cir. 1983) ................................................................................8

\*   *Deaver v. Seymour,*
822 F.2d 66 (D.C. Cir. 1987) ...........................................................................16, 17

*Ekwem v. Fenty,*
666 F.Supp. 2d 71 (D.D.C. 2009) ............................................................................5

*Eston v. Van Bolt,*
728 F. Supp. 1336 (E.D. Mich. 1990)....................................................................7, 8

\*   *Ficken v. Golden,*
696 F. Supp. 2d 21 (D.D.C. 2010) .................................................................9, 18, 19

\*   *Filarsky v. Delia,*
No. 10-1018, __ U.S. __, slip op. (April 17, 2012) ................................6, 12, 19

*Forman v. Ours,*
804 F. Supp. 864 (E.D. La. 1992) ............................................................................8

*Garcia v. Wilson,*
731 F.2d 640 (10th Cir. 1984) ..................................................................................8

\* *Gray v. Poole*,
   243 F.3d 572 (D.C. Cir. 2001) .........................................................................................9

*Hayes v. Chartered Health Plan*,
   360 F. Supp. 2d 84 (D.D.C. 2004) .................................................................................18

*Imbler v. Pachtman*,
   424 U.S. 409 (1976)...........................................................................................9, 10, 11

*In re Banks*,
   805 A.2d 990 (D.C. 2002) ...............................................................................................8

*Kwoun v. Se. Mo. Prof'l Standards Review Org.*,
   811 F.2d 401 (8th Cir. 1987) ...........................................................................................8

*Newcomb v. Ingle*,
   827 F.2d 675 (10th Cir. 1987) .........................................................................................8

\* *Simons v. Bellinger*,
   643 F.2d 774 (D.C. Cir. 1980) ................................................................................ *passim*

*Sparks v. Character & Fitness Comm.*,
   859 F.2d 428 (6th Cir. 1988) ...........................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................................................5

*United States v. Brookens*
   ("*Brookens II*"), No. 2011-CCC-10 (D.C. Super. Ct. Oct. 6, 2011)..................................4

*Watts v. Burkhart*,
   978 F.2d 269 (6th Cir. 1992) ...........................................................................................8

*Younger v. Harris*,
   401 U.S. 37 (1971)..........................................................................................................16

## RULES AND STATUTES

Rule 12(b)(6) of the Federal Rules of Civil Procedure....................................................1, 5, 18

Rule 21 of the Rules of the D.C. Court of Appeals ...........................................................14, 16

Rule 49 of the Rules of the D.C. Court of Appeals ........................................................ *passim*

In this lawsuit, Mr. Brookens alleges that Mr. Metzler and Covington, as well as many other defendants, have committed numerous common-law and constitutional torts in connection with a pending criminal case that seeks to hold Mr. Brookens in contempt for violating a 1986 injunction of the D.C. Court of Appeals that prohibited Mr. Brookens from practicing law or holding himself out as a lawyer in D.C.  Mr. Brookens seeks actual and punitive damages, as well as injunctive and declaratory relief to nullify certain rulings that have been made by the trial judge presiding over the pending criminal contempt proceedings.  The complaint against Mr. Metzler and Covington should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because: (1) the damages claims are barred by the doctrine of absolute immunity; and (2) a defendant in a pending criminal contempt case concerning the unauthorized practice of law has no right to file a separate civil suit seeking to overturn rulings made in the pending criminal case.[1]

## STATEMENT OF FACTS

### A.    Defendants Jack Metzler and Covington & Burling LLP

Mr. Metzler is an associate at the law firm of Covington & Burling LLP.  At all times relevant to this action, he has been an active member of the D.C. bar and an employee in Covington's Washington, D.C. office.  From February 4, 2009 until the present, Mr. Metzler has served as a member of the D.C. Court of Appeals Committee on the Unauthorized Practice of Law ("Committee").  On June 21, 2011, he was authorized by the Honorable José M. López of the D.C. Superior Court to serve as a special counsel for the Committee in Mr. Brookens'

---

[1]      Although it should not be necessary for the Court to reach the question, the complaint should also be dismissed because its allegations do not satisfy the plausibility standard established by the United States Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

contempt trial before Judge López so that he would be able to provide assistance to the lead prosecutor in those proceedings.[2]  *See* Affidavit of Theodore Metzler, Exhibit 1 (transcript of hearing in which Judge López approved the lead prosecutor's request to have Mr. Metzler serve as her co-counsel in the pending criminal contempt proceeding against Mr. Brookens); *see also* Rule 49 (e) (1) (B) of the Rules of the D.C. Court of Appeals (authorizing the appointment of special counsel to represent the Committee on Unauthorized Practice of Law and to present the Committee's proof and argument in a proceeding before the Court of Appeals for a violation of Rule 49).

### B.     Plaintiffs Benoit Brookens and Mary Todd

Plaintiff Benoit Brookens is a resident of the District of Columbia.  Compl. ¶ 1.[3]  He is not a member of the D.C. bar.  *Id.*  Plaintiff Mary Todd appears to be an acquaintance or colleague of Mr. Brookens.  *See id.* ¶ 103.  She also appears to be an attorney and represents that she is a member of the bar of the District of Columbia.  *See id.* ¶¶ 209, 260.

### C.     Brookens' Prior Unauthorized-Practice Violations and Injunction

In 1986, Mr. Brookens was found to have violated the D.C. Court of Appeals' prohibition on the practice of law by individuals who are not admitted to the D.C. bar.  *Brookens v. Comm. on Unauthorized Practice of Law* ("*Brookens I*"), 538 A.2d 1120, 1121 & n.1 (D.C. 1988).  For

---

[2]     The lead prosecutor in the pending criminal contempt case against Mr. Brookens is Cynthia Wright, an Assistant United States Attorney who was assigned by the office of the U.S. Attorney for the District of Columbia to prosecute the criminal contempt case against Mr. Brookens.  Ms. Wright is also the Chairman of the D.C. Court of Appeals Committee on the Unauthorized Practice of Law.  Ms. Wright and Mr. Metzler had investigated the claim against Mr. Brookens before the Court of Appeals referred it to Judge López for a hearing pursuant to Rule 49(e) of the Rules of the D.C. Court of Appeals.

[3]     Plaintiffs' Complaint contains two paragraphs designated "1."  The first is on page 2 of the Complaint and falls under the heading "Jurisdiction and Venue."  The second falls on page 3 of the Complaint under the section labeled "Parties."  The above citation refers to this second paragraph "1."

that offense, he was held in criminal contempt and enjoined from acting or holding himself out as a lawyer in the District of Columbia without becoming a member of that jurisdiction's bar. *Id.* at 1122 & n.6.[4]  The contempt conviction and injunction were upheld on review by a panel of the D.C. Court of Appeals. *Id.* at 1127.

### D.  Current Contempt Proceedings

On October 2, 2008, the Committee received a complaint from the Honorable Tyrone T. Butler, who was then the Chief Administrative Law Judge of the D.C. Office of Administrative Hearings. *See* Metzler Affidavit, Exhibit 2.  That complaint alleged that Mr. Brookens had apparently violated the injunction upheld in *Brookens I* and the unauthorized-practice prohibitions of D.C. Court of Appeals Rule 49. *Id.* at 1.  The Committee referred the matter to the D.C. Court of Appeals, which assigned the matter to Judge López of the D.C. Superior Court pursuant to Rule 49 (e).  Judge López is responsible for  deciding whether Mr. Brookens should (again) be held in criminal contempt for practicing law in the District in contravention of Rule 49 of the Rules of the D.C. Court of Appeals.  The evidentiary hearing before Judge López has concluded and the parties have submitted proposed findings of fact to Judge López.  Judge López

---

[4]      In particular, Mr. Brookens was enjoined from

  (1) representing any person other than himself, or any corporation, association, partnership, organization, or other entity, in any court in the District of Columbia unless he is a member of the bar of the court in which such representation takes place; (2) using such terms as "lawyer," "attorney," "counsel," "counselor" or "counsellor," "Esq.," or "Esquire" to refer to himself in such manner as to convey the impression that he is entitled or authorized to practice law in the District of Columbia, or in any way holding himself out as authorized or qualified to practice law in the District of Columbia; (3) engaging in any manner in the practice of law in the District of Columbia, as that term is defined in Rule 49(b)(3) of the General Rules of this court; and (4) engaging in any other conduct prohibited by Rule 49(b)(2) of the General Rules of this court.

*Brookens I*, 538 A.2d at 1122 n.6.

has not yet issued his decision.  The decision of Judge López may be appealed to the D.C. Court of Appeals pursuant to Rule 49(e)(4) of the Rules of the D.C. Court of Appeals.

### E.      Prior Attempt to Disqualify Mr. Metzler

During the proceedings before Judge López, Mr. Brookens filed a motion and a renewed motion seeking to dismiss the criminal contempt proceedings against him on the grounds, among others, that Mr. Metzler is not a public prosecutor and should not have been appointed as special counsel to assist in the prosecution of the criminal contempt proceeding against him.  *See* Metzler Affidavit, Exhibit 3, Order at 1, *United States v. Brookens* ("*Brookens II*"), No. 2011-CCC-10, (D.C. Super. Ct. Oct. 6, 2011) (denial of Mr. Brookens' "Motion to Dismiss for Lack of a Public Prosecutor").  Judge López denied the motion on October 6, 2011.  *Id.*

### F.      Plaintiffs' Allegations

Plaintiff Brookens' numerous claims boil down to the assertion that his contempt prosecution is unwarranted and racially motivated.  He seeks monetary, declaratory, and injunctive relief against Mr. Metzler, Covington, the District of Columbia, various federal and D.C. officials, the District of Columbia, and the United States of America.  Plaintiff Todd alleges that an unknown U.S. Marshal physically assaulted her and that another Marshal berated and threatened her.

## ARGUMENT

Plaintiffs' claims against Mr. Metzler and Covington should be dismissed because they fail to state a claim upon which relief can be granted.  Their damages claims fail because Mr. Metzler and Covington are absolutely immune from claims that seek damages based on Mr. Metzler's work on behalf of the Committee.  Mr. Brookens' claims for injunctive and declaratory relief should be dismissed because they ask this Court to interfere with an ongoing criminal contempt proceeding in the D.C. courts.

## RULE 12(B)(6) STANDARD OF REVIEW

In considering a motion to dismiss, a court is entitled to consider not only the facts alleged in the complaint, but also any documents attached to or incorporated in the complaint, any matters of which the Court may take judicial notice, and matters of public record.  *Abhe & Svodoba, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (quoting *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Because the complaint in this case refers extensively to the ongoing criminal contempt proceedings against Mr. Brookens, it is particularly appropriate for the Court to consider documents that are part of the record of those proceedings, including all of the exhibits to the affidavit of Mr. Metzler.

Moreover, in considering the allegations of the complaint, the Court must discard all "legal conclusions," "[t]hreadbare recitals of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.  The question is whether the remaining "well-pleaded factual allegations," taken as true, "'state a claim to relief that is plausible on its face,' in that 'the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ekwem v. Fenty*, 666 F.Supp. 2d 71, 75–76 (D.D.C. 2009) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

As shown below, no part of the plaintiffs' complaint can survive this standard.

I.    **PLAINTIFFS' CLAIMS AGAINST MR. METZLER MUST BE DISMISSED BECAUSE MR. METZLER IS ABSOLUTELY IMMUNE FROM DAMAGES SUITS ARISING FROM HIS WORK FOR THE COMMITTEE, AND PLAINTIFFS CANNOT USE THIS COURT TO REVIEW AND REVERSE UNFAVORABLE RULINGS IN THE ONGOING CONTEMPT PROCEEDINGS.**

   A.    **Plaintiffs' Damages Claims Against Mr. Metzler Are Barred By Absolute Immunity.**

Plaintiffs' damages claims fail because they are based on acts that Mr. Metzler performed in the course of his duties as a member of the Committee, and he is absolutely immune from such claims where, as here, the Committee was acting within its jurisdiction.[5]  *Simons v. Bellinger*, 643 F.2d 774, 778 (D.C. Cir. 1980).  *See also Filarsky v. Delia,* No. 10-1018, __ U.S. __, slip op. at 11–12 (April 17, 2012) (private individuals engaged in public service are entitled to the same immunities as public servants).

In *Simons*, which also dealt with allegations of unauthorized practice in D.C., certain Committee officials became aware of the fact that the plaintiffs, Morton and Barbara Simons, who were members of the bar in New York, were maintaining an office in the District of Columbia and advertising themselves as attorneys in D.C.  643 F.2d at 776.  Although their D.C. practice was limited to appearances before federal courts and agencies, this limitation was not apparent on their public materials (*e.g.*, their letterhead).  *Id.*  Consequently, "the Committee believed that . . . the Simonses improperly held themselves out as authorized to practice law in the District of Columbia."  *Id.*  After an inquiry that included the issuance of subpoenas and the receipt of testimony from Mr. Simons, the Committee opted not to take action on what it dubbed

---

[5]    The allegations against Mr. Metzler also fail to satisfy the plausibility standard established by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  All of the allegations of wrongful conduct against Mr. Metzler are naked assertions that are entirely conclusory, completely devoid of any meaningful factual content, and inherently implausible. There are no well-pleaded allegations that state a claim for relief that is plausible on its face in that the Court could draw a reasonable inference that Mr. Metzler has done anything wrong.

a "technical violation" of the D.C. bar rules.  *Id.*  The Simonses then sued the Committee members in their official and individual capacities, alleging various constitutional violations and seeking $300,000 in damages.  *Id.*  This Court dismissed the Simonses complaint, *id.*, and the D.C. Circuit affirmed, holding that the defendants' Committee-related work was protected by absolute quasi-judicial immunity, *id.* at 778.

In holding the Committee members absolutely immune, the D.C. Circuit applied the test adopted by the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978).  *Simons*, 643 F.2d at 777–78.  That three-part inquiry begins with an assessment of the "functional comparability of an official's judgments to those of a judge."  *Id.* at 777 (internal quotation marks omitted). Second, the type of controversy in which the official is embroiled "must be sufficiently intense so that there is a realistic prospect of continuing harassment or intimidation by disappointed litigants."  *Id.*  Third, "the system in which the official operates must contain safeguards adequate 'to reduce the need for private damage actions as a means of controlling unconstitutional conduct.'"  *Id.* (quoting *Butz*, 438 U.S. at 512).  Finally, the Court held that the absolute immunity actually controlled in the case before it because the Committee had acted within its jurisdiction in evaluating the Simonses activities and therefore was entitled to absolute quasi-judicial immunity.

Numerous other courts have also adopted the rule articulated in *Simons*.  One factually similar case is *Eston v. Van Bolt*, 728 F. Supp. 1336 (E.D. Mich. 1990).  There, the court applied *Simons* and held that members of the Michigan Attorney Discipline Board and Attorney Grievance Commission were absolutely immune from a disgruntled (suspended) attorney's damages claims.  *See id.* at 1340.  The plaintiff in that suit argued that his three-year suspension violated the Fifth and Fourteenth Amendments and sought reparations from the responsible

Michigan officials. *Id.* at 1337.  Citing *Simon*, the Court concluded the decision to prosecute the

plaintiff was "sufficiently comparable to a judicial judgment so as to merit absolute immunity."

*Id.* at 1340.  It also concluded that the relevant committee and commission officials were likely

targets of retaliatory lawsuits and that sufficient safeguards (*e.g.*, public, adversarial hearings)

existed to obviate the need for private damages actions against the officials.  *Id.*  Consequently,

the Court held the defendants absolutely immune.  *See id.*

 Many other courts have also accepted and applied *Simons*.  *See In re Banks*, 805 A.2d

990, 1001 (D.C. 2002) (citing *Simon* and recognizing the "absolute immunity for damages

conferred on the Committee and its members"); *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir.

1993) (*per curiam*) (state bar disciplinary committee entitled to absolute immunity); *Sparks v.*

*Character & Fitness Comm.*, 859 F.2d 428, 434 (6th Cir. 1988) (affording absolute immunity to

members Kentucky Supreme Court's Character and Fitness Committee); *Clulow v. Oklahoma*,

700 F.2d 1291, 1298 (10th Cir. 1983) (citing *Simon* for the proposition that "bar officials charged

with the duties of investigating, drawing up, and presenting cases involving attorney discipline

enjoy absolute immunity from damage claims for such functions"), *overruled on other grounds*

*by Garcia v. Wilson*, 731 F.2d 640 (10th Cir. 1984) *and Newcomb v. Ingle*, 827 F.2d 675 (10th

Cir. 1987); *Forman v. Ours*, 804 F. Supp. 864, 868 (E.D. La. 1992) (absolute immunity applies

to bar-committee prosecutor who prosecuted plaintiff for disciplinary-rule violations); *cf. Watts*

*v. Burkhart*, 978 F.2d 269 (6th Cir. 1992) (absolute quasi-judicial immunity for state medical

licensing board officials who pursued revocation of a physician's license); *Bettencourt v. Bd. of*

*Registration in Med.*, 904 F.2d 772 (1st Cir. 1990) (same) *Kwoun v. Se. Mo. Prof'l Standards*

*Review Org.*, 811 F.2d 401 (8th Cir. 1987) (absolute immunity for state employees' decision to

exclude physicians from Medicare and Medicaid reimbursement programs).

Mr. Metzler meets each of these requirements and is therefore entitled to the same

absolute immunity identified in *Simons.  See also Gray v. Poole,* 243 F.3d 572 (D.C. Cir. 2001)

(a Covington associate who is acting as special counsel for the District of Columbia has absolute

immunity against claims for damages based on her conduct in initiating and prosecuting a child

neglect action); *Ficken v. Golden*, 696 F. Supp. 2d 21, 29–31 (D.D.C. 2010) (dismissing

damages claims against both Covington and a Covington associate because a Covington

associate has absolute immunity against claims for damages based on her conduct in initiating

and prosecuting a child neglect action while acting as special counsel for the District of

Columbia).

### 1.    Mr. Metzler's challenged activities are functionally judicial in nature.

*Simons* identified two ways in which the defendant Committee members' actions were

"functional[ly] comparab[le] . . . to those of a judge."  643 F.2d at 779 (final alteration in

original) (internal quotation marks omitted).  "First, and most significantly, the Committee

members were clearly engaged in preparing and, perhaps, initiating, a particular

lawsuit . . . . Second, in assessing whether to initiate a prosecution, the Committee was

performing, by delegation, the inherent judicial function of determining who is authorized to

practice law."  *Id.* at 779–80.  Both of these rationales—(1) preparing and prosecuting a lawsuit;

and (2) exercising the judicial power and duty to determine a person's ability to practice law—

are present here even more strongly than they were in *Simons.*

In explaining the first of these rationales (preparing and prosecuting a lawsuit), *Simons*

began with the Supreme Court's conclusion in *Imbler v. Pachtman*, 424 U.S. 409 (1976).  *Imbler*

held that "in initiating a prosecution and in presenting the [government's] case, the prosecutor is

immune from a civil suit for damages under § 1983."  *Id.* at 431; *see Simons*, 643 F.3d at 780.

*Simons* then extended this rule to an earlier stage in the prosecution process, immunizing

Committee members' investigation into an apparent rules violation, which the members used to inform their decision not to initiate a formal proceeding.  *Id.* at 779–80.

In thus extending *Imbler*, the *Simons* Court concluded that the Committee members' activities were sufficiently "advocatory" (as opposed to predominantly investigative) and therefore of a quasi-judicial nature that deserved the protections of absolute immunity; the Court based this conclusion on the fact that the Committee's interactions with the Simonses "had passed beyond a mere search for the signs of illegal conduct and even beyond an investigation for the perpetrators of that conduct."  *Id.* at 780.  Instead, the Court noted, "[f]rom their first contact with the Simonses, the [Committee] members had already established a prima facie case" of a bar rules violation.  *Id.*  In other words, because they had "genuinely focused upon particular defendants and a particular wrong, the Committee [members were] entitled to absolute immunity when [making] inquiries necessarily antecedent to [deciding whether to initiate proceedings against the Simonses]."  *Id.*

The *Imbler* rule, as construed by *Simons*, covers all of the conduct alleged by the plaintiffs here.  According to the plaintiffs' complaint, Mr. Metzler's allegedly unlawful conduct consisted *entirely* of actions involved in the initiation and prosecution of a criminal case, including:

- "filing false complaints and criminal charges . . . which resulted in the unlawful search, photos of the plaintiffs' place of residence and detaining the named plaintiff[s]," Compl. ¶ 54; *accord id.* ¶¶ 96, 105–06, 118, 138, 140, 169, 220–21; 246;

- "us[ing] evidence against the defendant knowing that the evidence was false, incorrect and allowed knowingly false testimony by [additional witnesses] to be presented against the plaintiff, Benoit Brookens," *id.* ¶ 139; *accord id.* ¶ 141;

- personally "undert[aking] th[e] prosecution [of plaintiff Brookens] in violation of the D.C. Court of Appeals rules and procedure," *id.* ¶ 146;

- denial of a "'show cause' or a 'probable cause hearing' to challenge [Brookens'] arrest and criminal charges as provide[d] by [the] rules of the District of Columbia Courts . . . at the request of defendants Wright and Metzler," *id.* ¶ 168;

- "knowingly violat[ing] Mr. Brookens' right to due process, under 42 U.S.C. [§] 1985(3),"[6] *id.* ¶ 204;

- "perpetrat[ing] a fraud upon Judge Lopez," *id.* ¶ 205; *accord id.* ¶ 235;

- "[seeking] to deter, intimidate, and threaten witnesses who could appear in court on Mr. Brookens' behalf," *id.* at ¶ 208; *accord id.* at ¶ 209.

Indeed, Mr. Metzler's actions are even closer to the core of "advocatory" conduct identified in *Imbler*—initiating and prosecuting a criminal case—than were the facts in *Simons*. Here, as in *Imbler*, the challenged actions are those involved in initiating and prosecuting a criminal case. 424 U.S. at 410. In *Simons*, by contrast, the Court had to decide how to treat "inquiries necessarily antecedent to [a] determination regarding prosecution." *Simons*, 643 F.2d at 780. If—as *Simons* held—absolute immunity applies to persons who conduct such inquiries for the Committee because such inquiries are similar to prosecuting a criminal case, it follows *a fortiori* that absolute immunity applies to Mr. Metzler's conduct in assisting with the prosecution of a criminal contempt case against Mr. Brookens.

---

[6]    Section 1985(3) makes it unlawful for

two or more persons in any State or Territory [to] conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or . . . to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy.

In *Filarsky*, No. 10-1018, __ U.S. __, slip op. at 7, the Supreme Court noted that private lawyers have often been engaged in this country to participate in criminal prosecutions on behalf of the state, and that Abraham Lincoln engaged in such prosecutions when he was a private lawyer. In *Filarsky,* the Supreme Court also cited with approval (slip op. at 5) its decision in *Imbler*, which held that public prosecutors have absolute immunity for claims seeking damages based on their conduct in connection with prosecuting crimes. *Filarsky* held that private lawyers engaged in public service are entitled to the same immunity as public servants: "immunity under §1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis." *Filarsky,* slip op. at 11; *see also id.* at 8, 15. Accordingly, Mr. Metzler is entitled to the same absolute immunity against claims based on his conduct in connection with the prosecution of Mr. Brookens for criminal contempt as is Cynthia Wright, the Assistant United States Attorney who was appointed by the office of the United States Attorney for the District of Columbia to be lead counsel in that prosecution.

The *Simons* Court listed a second reason for concluding that the "Committee members' work is functionally comparable to the work of judges," namely that their "efforts to ascertain those [who are] practicing law without proper authority" were "judicial" in nature. 643 F.2d at 780. "'[I]t rests exclusively with the court," *Simons* observed, "'to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed.'" *Id.* at 781 (quoting *Ex parte Secombe*, 60 U.S. 9, 13 (1857)). Thus, the Committee members, though not judges themselves, were performing a judicial function in investigating and deciding whether to prosecute an apparent case of the unauthorized practice of law. *Id.* This rationale applies equally here, since Mr. Metzler, like the defendants in *Simons*, has been sued for executing the judicial function delegated to the Committee by the Court of Appeals.

Because Mr. Metzler's alleged conduct arose as part of the initiation and prosecution of a criminal case and in furtherance of judicial functions delegated to the Committee by the D.C. Court of Appeals, he satisfies the first *Simons* immunity factor.

> **2.     Failing to hold Mr. Metzler absolutely immune would invite harassing lawsuits by those investigated by the Committee.**

*Simons* held that the second prong of the *Butz* test also weighed in favor of absolute immunity in the context of Committee activities.  That second prong asks whether "the officials who participate in the process of adjudication are likely to become defendants in later suits brought by litigants embittered by the outcome in the original forum." *Simons*, 643 F.2d at 781. As the Court aptly observed, "Committee members are probable targets for harassing lawsuits. Indeed, because the Committee only prosecutes those who purport to be attorneys, its members might well be more likely targets for such litigation than either judges or prosecutors." *Id.* at 782.  "Accordingly," the Court concluded, "absolute immunity is an appropriate shield." *Id.* Nothing about this calculus has changed in the last two decades.  As a result, this factor, too, supports Mr. Metzler's absolute immunity.

> **3.     The existence of judicial safeguards negate any need to subject Committee members like Mr. Metzler to damages actions.**

*Simons* declared that Committee members merit absolute immunity because unauthorized–practice prosecutions possess sufficient safeguards to "eliminate the need for private damage actions as a means of curbing unconstitutional conduct." *Id.*  The Court noted that all of the safeguards enumerated in *Butz* were also present in unauthorized–practice prosecutions, including adversarial hearings before an impartial judge and the availability of appellate review. *Id.*  Moreover, the Court noted that the Committee's prosecutorial powers were strictly cabined: it may seek only injunctive relief or criminal contempt. *Id.*  Finally, the individual Committee members served short, fixed terms of office and were subject to writs of

mandamus from the D.C. Court of Appeals—yet another means of curbing any unlawful or improper conduct.  *Id.*

These limitations still hold true.  *See* D.C. App. R. 21(a) (writs of mandamus); 49(d)(1) (three-year term of Committee members); 49(e)(2) (sanctions limited to injunction and criminal contempt); 49(e)(3) (proceedings before a judge of the District of Columbia); 49(e)(4) (right of appeal).  Indeed, the safeguards present here are even greater because the proceedings at issue are criminal contempt proceedings, in which Mr. Brookens is entitled to the additional protections that are afforded to defendants in such cases, such as a jury trial for cases where substantial fines or significant prison sentences may be imposed.  *See Brookens I*, 538 A.2d at 1123.  As a result, this final *Butz/Simons* factor also supports holding Mr. Metzler absolutely immune from the plaintiffs' damages claims.

> **4.     The Committee acted within its jurisdiction in pursuing contempt proceedings against Mr. Brookens.**

Mr. Metzler is entitled to immunity because all of the *Butz/Simons* factors weigh in his favor, and the challenged Committee action was within that body's jurisdiction.  *Simons* underscored that, in the context of immunity claims, "'jurisdiction' ought to be defined broadly," such that "an act is within the official's jurisdiction if it is not 'manifestly or palpably beyond his authority.'"  643 F.2d at 786 (quoting *Spalding v. Vilas*, 161 U.S. 483, 498 (1896)).  The Court specifically rejected the notion that an "'allegation that an official, acting under color of law, has deprived someone of his rights necessarily implies that, in the particular case, the official exceeded his authority.'"  *Id.* (quoting *Briggs v. Goodwin*, 569 F.2d 10, 15 (D.C. Cir. 1977)).  In other words, a plaintiff must allege more than a deprivation of his rights via unlawful actions by the defendant official.  Applying that standard, the Court concluded that the Committee's activities in investigating the Simonses and evaluating the prospective case against them "was

plainly within the general matters which the District of Columbia Court of Appeals has committed to the Committee's discretion." *Id.*

Just so here.  The Committee gathered information, initiated proceedings to enforce an injunction, and obtain sanctions for apparently contumacious conduct.  The Committee, and specifically Mr. Metzler, acted within the Committee's lawful jurisdiction at all times; the plaintiffs' generic allegations of unlawful conduct do not suffice to defeat this presumption. Thus Mr. Metzler is entitled to absolute immunity from the plaintiffs' damages claims.

<p align="center">*       *       *</p>

To summarize, Mr. Metzler's supposed actions all took place under the aegis of initiating and pursuing a criminal prosecution and in furtherance of the judicial function delegated to him as a member of the Committee.  Failing to afford absolute immunity to Committee members in his situation would encourage acrimonious litigation by targets of Committee investigations. There are ample safeguards, including a hearing before an impartial judge and a right of appeal to the D.C. Court of Appeals, to ensure that Mr. Brookens constitutional and other rights will be protected during the course of the pending criminal contempt proceeding.  As a consequence, Mr. Metzler is absolutely immune from the plaintiffs' damages claims; accordingly, they must be dismissed.  Moreover, as noted above at page 1, note 1, the allegations of the complaint do not satisfy the plausibility standard established by the Supreme Court in *Iqbal*, 556 U.S. at 678.

**B.    Plaintiff Brookens' claims for declaratory and injunctive relief fail to state a claim because they seek to have this court interfere with ongoing criminal proceedings in another forum.**

Plaintiff Brookens' requests for declaratory and injunctive relief fail to state a claim because they are attempts to do an end-run around the unfavorable rulings that Mr. Brookens has received in his ongoing contempt litigation before Judge López.  Although the District's unique position in the Federal system means that there is no precedent squarely on point, it is a firm rule of that system that a federal court will not usurp or interfere with an ongoing criminal matter in either a State court, *see Younger v. Harris*, 401 U.S. 37 (1971), or other federal court, *see, e.g.*, *Deaver v. Seymour,* 822 F.2d 66 (D.C. Cir. 1987), especially where (as here) there are ample opportunities to vindicate the plaintiff's rights in that other forum.

Mr. Brookens' request for declaratory and injunctive relief should be dismissed as to Mr. Metzler because it seeks to circumvent an unfavorable ruling in the D.C courts.  Specifically, Mr. Brookens requests that Mr. Metzler be enjoined "from serving as a prosecuting attorney or participating in the trial in any other capacity except as a witness or complainant," Compl. ¶ 326, and asks for a declaration that "the prosecution of Benoit Brookens by Theodore Metzler, a private attorney, violates the U.S. Constitution," *id.* at 50 (unnumbered paragraph).  But Mr. Brookens has already failed to have Mr. Metzler removed as a prosecutor in the ongoing contempt action.  *See* Metzler Affidavit, Exhibit 3.  His remedy is to appeal that ruling at the conclusion of his trial or to seek a writ of mandamus pursuant to Rule 21(a) of the Rules of the D.C. Court of Appeals.  Dashing to federal court in the midst of a criminal trial to obtain review of the D.C. court's interlocutory rulings is an abuse of this court's jurisdiction and should be rejected accordingly.

In *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), Michael Deaver, a former deputy chief of staff for President Reagan, sought to enjoin an investigation that was being conducted by

an independent counsel who had been appointed pursuant to the Ethics in Government Act.

Among other things, Mr. Deaver argued that it was unconstitutional for a criminal investigation

to be conducted by an independent counsel rather than a regular prosecutor.  The United States

Court of Appeals for the D.C. Circuit ruled that Mr. Deaver should make his objections during

the course of any criminal proceedings that were brought against him, or during an appeal from

rulings made in those criminal proceedings.  The Court held, however, that Mr. Deaver could not

seek injunctive relief in a separate, independent civil lawsuit:

> Congress has established a comprehensive set of rules governing federal criminal
> prosecutions—the Federal Rules of Criminal Procedure.  These rules provide
> adequate, although limited, opportunities for defendants to challenge
> shortcomings in prosecutorial authority.  The final judgment rule, moreover,
> generally prevents defendants from bringing appeals until after conviction.  We
> cannot allow Deaver to avoid these rules—and thereby encourage a flood of
> disruptive civil litigation—by bringing his constitutional defense in an
> independent civil suit.  822 F.2d at 71.

That ruling applies with equal force to this case.

Mr. Brookens' requests for injunctive and declaratory relief, at least with respect to Mr.

Metzler, are an improper attempt to make a collateral attack on rulings made during the course of

a case for criminal contempt that is pending before the D. C. Court of Appeals.  Accordingly,

they should be dismissed.

## II.    PLAINTIFFS' CLAIMS AGAINST COVINGTON MUST BE DISMISSED BECAUSE THEIR COMPLAINT FAILS TO ALLEGE ANY UNLAWFUL CONDUCT OTHER THAN THAT FOR WHICH MR. METZLER IS ABSOLUTELY IMMUNE.

Plaintiffs have not alleged any independent claim for relief against Covington.  Indeed,

Ms. Todd states no claim against Covington whatsoever.  The gravamen of her complaint is that

certain U.S. Marshals physically assaulted her and threatened to arrest and prosecute her.  *E.g.*,

Compl. ¶¶ 211, 222, 224, 241, 243, 258.  She does not allege that either Covington or Mr.

Metzler participated in these acts.   Mr. Brookens does not seek either injunctive or declaratory relief against Covington.  Compl. ¶¶ 326–28, p. 50 (unnumbered paragraph).

Accordingly, the only claims against Covington that are alleged in the complaint are Mr. Brookens' claims for damages.  But all of those claims are premised on the conduct of Mr. Metzler in his capacity as a member of the Committee and as special counsel appointed under Rule 49 (e)(1)(B) of the Rules of the D.C. Court of Appeals to present the Committee's evidence against Mr. Brookens during the course of the pending criminal contempt case.[7]

Plaintiffs cannot recover from Covington  because Mr. Metzler is an employee of Covington.  "[V]icarious liability is not an independent cause of action . . . ."  *Hayes v. Chartered Health Plan,* 360 F. Supp. 2d 84, 90 (D.D.C. 2004).  That is, a principal, such as an employer, cannot be held liable "[i]n the absence of agent liability."  *Id.*  Plaintiffs' complaint identifies Covington exclusively as "the employer of [Mr.] Metzler," Compl. ¶ 17, and their only claims against Covington derive from Mr. Metzler's alleged actions.  Because Mr. Metzler is absolutely immune from the damages claims of Mr. Brookens, it follows that Covington is also absolutely immune from those claims.  *See also Ficken v. Golden,* 696 F. Supp. 2d 21, 30-31 (D.D.C. 2010) (dismissing damages claims against Covington because a Covington associate has absolute immunity against damages claims based on her conduct in initiating and prosecuting a

---

[7]         Mr. Brookens does make additional generic statements accusing Covington of various forms of unsavory behavior, such as attempting "to control pro bono representation in the District of Columbia for [its] financial benefit."  Compl ¶ 41; *see also id.* ¶ 73 (alleging that "Mr. Brookens was targeted by the defendants, District of Columbia, Cynthia R. Wright, Esquire, Covington and Burling, LLP, Theodore Metzler, Esquire, the Honorable Tyrone Butler, and the Honorable Jennifer Long because he successfully obtained benefit to African-Americans, the poor, and the underserved tenant community").  Such claims are not only spurious but, more importantly for present purposes, amount to nothing more than "naked assertion[s] devoid of further factual enhancement."  *Iqbal,* 556 U.S. at 679.  As such, they fail to state a plausible claim for relief and thus entitle Mr. Brookens to nothing but a swift dismissal under Rule 12(b)(6).

child neglect action while serving as special counsel for the District of Columbia).  Moreover,

under *Filarsky*, No. 10-1018, __ U.S. __ , slip op. at 11, Covington has the same absolute

immunity against damages claims based on the conduct of Mr. Metzler in prosecuting a criminal

contempt proceeding against Mr. Brookens in Mr. Metzler's capacity as special counsel for the

D.C. Court of Appeals Committee on the Unauthorized Practice of Law as the United States and

the U.S. Attorney's office have for damages claims based on the conduct of Cynthia Wright as

lead counsel in those proceedings.

### CONCLUSION

For the foregoing reasons, the complaint against Mr. Metzler and Covington should be

dismissed with prejudice.

Respectfully submitted,

 /s/ Jeffrey G. Huvelle
Jeffrey G. Huvelle (D.C. Bar No. 227769)
William P. Skinner (D.C. Bar No. 230805)
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Tel:    202-662-5470
Fax:    202-778-5470
Email: jhuvelle@cov.com
Email: wskinner@cov.com

April 20, 2012

Counsel for Defendants Theodore Metzler and
Covington & Burling LLP

## CERTIFICATE OF SERVICE

I hereby certify I have today directed that a true and correct copy of the foregoing Motion to Dismiss By Defendants Theodore Metzler and Covington & Burling LLP, the Memorandum Of Defendants Theodore Metzler and Covington & Burling LLP in Support of Motion To Dismiss The Complaint, the Affidavit of Theodore Metzler and the exhibits thereto, and a Proposed Form of Order be served by First Class Mail and by email (for those persons for whom an email address is provided below) upon:

Claude W. Roxborough, II
Kimmel & Roxborough LLP
709 Irving Street, NW
Washington, DC 20010
(202) 368-8847
Fax: (202) 332-7600
Email: roxborougl@aol.com
*Counsel for plaintiffs Benoit Brookens* and *Mary Todd*

Melodie Venee Shuler
Kimmel & Roxborough LLP
709 Irving Street NW
Washington, DC 20010
(240) 551-0140
Email: melodieshuler@yahoo.com
*Counsel for plaintiffs Benoit Brookens* and *Mary Todd*

Michael J. Lanzdorf
Office of the Attorney General for the District of Columbia
441 Fourth Street NW, Room 600S
Washington, DC 20001
(202) 724-6648
Fax: (202) 741-0573
Email: michael.lanzdorf@dc.gov
*Counsel for defendant District of Columbia*

Wynne P. Kelly
Assistant United States Attorney
Office of the United States Attorney for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530
(202) 307-2332
Email: wynne.kelly@usdoj.gov
*Counsel for defendant Cynthia R. Wright, Esq.*

United States of America
555 4th Street, NW
Washington, DC 20530

District of Columbia Bar
1101 K Street N.W.
Washington, DC 20005

Office of the United States Attorney for the District of Columbia
Ronald Malchen, U.S. Attorney for the District of Columbia
555 4th Street, NW
Washington, DC 20530

Jeffrey Ragsdale
Office of the United States Attorney for the District of Columbia
555 4th Street, NW
Washington, DC 20530

The Honorable Tyrone Butler
District of Columbia Office of Administrative Hearings
One Judiciary Square
441 4th Street, NW
Washington, DC 20001

The Honorable Jennifer Long
One Judiciary Square
District of Columbia Office of Administrative Hearings
441 4th Street, NW
Washington, DC 20001

David Neumann
United States Marshals Service
333 Constitution Avenue, NW
Washington, DC 20001

Six Unidentified U.S. Marshals
United States Marshals Service
333 Constitution A venue, NW
Washington, DC 20001

One Unidentified Civilian Employee
United States Marshals Service
333 Constitution Avenue, NW
Washington, DC 20001

Two Unidentified Metropolitan Police Officers
Metropolitan Police Department Headquarters
300 Indiana Avenue, NW
Washington, DC 20001


  /s/  Jeffrey G. Huvelle
Jeffrey G. Huvelle (D.C. Bar No. 227769)
*Attorney for Defendants Theodore Metzler*
*and Covington & Burling LLP*

April 20, 2012